**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NORMA S. TERRY,  ) | CASE NO. 5:09-cv-2025 |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social Security,  ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant.  ) | |
| ) | |

Plaintiff, Norma S. Terry, ("Terry"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Terry's applications for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416 (i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the final decision of the Commissioner is VACATED and REMANDED.

**I. Procedural History**

Terry filed her applications for DIB and SSI on December 21, 2005 alleging disability beginning April 1, 2002.[1]  Her applications were denied initially and upon reconsideration.  Terry timely requested an administrative hearing.

ALJ, Peter Beekman, held a hearing on October 6, 2008, at which Terry, who was represented by counsel, Hershel Goren, M.D. medical expert ("ME"), and Deborah Lee, vocational expert ("VE") testified.  The ALJ issued a decision on January 27, 2009, in which he determined that Terry was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Terry filed an appeal to this Court.

On appeal, Terry claims the ALJ erred by:  (1) failing to grant appropriate weight to the treating physician's and consultive examiner's opinions; (2) failing to articulate his reasons for finding that Terry's impairments did not meet or equal a Listing; (3) failing to articulate the basis for his credibility findings; and (4) finding substantial evidence exists that Terry is capable of performing jobs that exist in significant numbers in the economy.  The Commissioner disputes these claims.

**II. Evidence**

**A. Personal and Vocational Evidence**

Terry was born on August 1, 1957.  (Transcript ("Tr.") 336).  She has a GED.  (Tr.

---

[1]Terry previously applied for benefits in 2001. (Tr. 50).  On August 5, 2004, a prior Administrative Law Judge, ("ALJ") awarded her benefits for the closed period from September 11, 2001 through October 1, 2002.  (Tr. 24).

2

357). She has past relevant work as a hand packer. (Tr. 578).

**B. Medical Evidence[2]**

On April 24, 2002, Terry underwent surgery to remove three bones in her right wrist. (Tr. 184-186).

On April 17, 2005, Terry presented to the Barberton Citizens Hospital ("Barberton") emergency room complaining of right wrist pain after someone forcibly flexed her wrist. (Tr. 419-420). X-rays revealed no fracture or dislocation. Terry was placed in a wrist splint and given analgesics. She was advised to follow up with her orthopedist in two days for reevaluation. (Tr. 419-420).

On January 27, 2006, the Board of Disability Determination ("BDD") sent a medical form to Barberton. Sometime thereafter, the form was returned undated and unsigned. (Tr. 441-443). The form indicates that Terry was first seen on July 21, 2004 and was last seen on December 15, 2005. Terry was diagnosed with right wrist pain status post fracture and surgical repair, chronic low back pain, and osteoporosis. (Tr. 442). The examiner noted that Terry complained of right wrist pain and that she is wearing a wrist splint and ace bandage. The examiner noted Terry had a limited range of motion. It was noted that Terry was prescribed Neurontin and a Lidoderm patch for pain, and that she takes Miacalcin for osteoporosis . Terry was noted to be compliant with her treatment. (Tr. 442-443).

On March 15, 2006, Terry presented to Maureen Gallagher, D.O., M.P.H. for a consultive examination. (Tr. 456-459). Upon examination, Dr. Gallagher, noted

---

[2]Because only Terry's physical impairments are at issue on appeal, recitation of the medical evidence is limited to this issue.

3

swelling of the AC joint on the left clavicle, increased pain in the left shoulder, and mildly decreased range of motion in the left clavicle.  Terry had swelling and deformity of the right wrist with decreased range of motion.  Terry also had pain and swelling of the left hand medially in the carpal-metacarpal region of the left wrist and mildly decreased range of motion in the left wrist.  She also had decreased extension in her elbows.  Dr. Gallagher noted that Terry wore a Lidocaine patch for pain and wrist splints.

Dr. Gallagher opined that Terry could not lift or carry more than five pounds.  She could not sustain a grasp and would easily drop things.  Dr. Gallagher further opined that Terry should not be placed in a position that requires good manual dexterity, good motor strength in her hands, or repeated manipulation of fine objects.  (Tr. 459-459).

On April 24, 2006, Edmond Gardner, M.D. completed a physical residual functional capacity assessment.  (Tr. 481-488).  Dr. Gardner opined that Terry could lift 20 pounds occasionally and 10 pounds frequently.  She could stand, walk, and sit for aboult six hours out of an eight hour workday.  Pushing and pulling were limited to her left arm while occasionally using her right arm as an assist.  She was limited in reaching, handling, fingering, and feeling.  (Tr. 481-488).  Dr. Maria Congbalay reviewed and confirmed Dr. Gardner's findings on October 6, 2006.

On December 11, 2006, Michael Sesay completed an assessment form.  (Tr.494-495).  Dr. Sesay opined that due to her wrist fracture, Terry could lift up to five pounds occasionally.  She was also limited in her ability to handle, push, pull, and be around moving machinery.  (Tr. 494-495).

**C.  Hearing Testimony**

Terry testified that she has constant pain in her right wrist when she lifts heavy objects.  (Tr. 563).  She thinks she was diagnosed with rheumatoid arthritis about four years ago.  (Tr. 563).  Terry testified that she can use her hands for 15 to 20 minutes, and then she needs to rest them for an equivalent amount of time.  She drops things and loses feeling in her right hand.  (Tr. 567).   Terry testified that she has had a bad back since she was 28 years old, which limits her ability to stand and walk for extended periods.  (Tr. 564-565).  She wears braces on her wrists and uses pain medication and pain patches.  (Tr. 563, 566).

Terry testified that a normal day consists of waking up, getting coffee, watching television, cleaning, taking care of her plants, getting dinner ready, and watching television before bed.  (Tr. 565).  Terry testified that she sweeps, dusts, washes dishes, and vacuums.  (Tr. 566).

Medical Expert, Hershel Goren, M.D., testified that Terry had arthritis in her right wrist.  He did not believe her impairments met or equaled a listing.  (Tr. 569).  Dr. Goren testified that his opionions were based on his clinical experience and knowledge of the medical literature.  He opined that Terry could lift 20 pounds occasionally and 10 pounds frequently.  She could occasionally handle with her right hand.  (Tr. 570).  Dr. Goren testified that he did not see evidence to support significant restriction in Terry's left hand. (Tr. 572-573).  He testified that he believed pushing and pulling were primarily shoulder functions.  Dr. Goren stated that wrist fractures would not affect Terry's ability to finger.  (Tr. 572-573).

The VE testified that Terry's most recent work approximated a hand packager job which is classified as medium but was probably performed at the sedentary level.

The ALJ asked the VE to consider an individual who could: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk and sit for six hours out of an eight hour workday; (3) push/pull with her left arm only; (4) frequently climb a ramp or stairs but never use a ladder, rope or scaffold; (5) frequently balance, stoop, kneel, and crouch, but never crawl; (6) frequently reach bilaterally; (7) occasionally handle with the right (dominant) hand; and (8) frequently finger and feel bilaterally.  The individual also needed to avoid smoke, fumes, and unprotected heights.  (Tr. 578).

The VE testified that such an individual could not perform Terrry's past work. (Tr. 578).  However, such an indvidual could perform work as a furniture rental clerk for which there are 80,000 jobs nationally, 2,400 jobs in Ohio, and 212 jobs in the region; tanning salon attendant, for which there are 4,300 jobs nationally, 162 in Ohio, and 44 in the region; or gate guard, for which there are 145,000 nationally, 4,500 jobs in Ohio, and 340 jobs in the region.

The VE testified that these jobs were coded as light due mainly to the standing and walking requirements, not for the lifting and carrying requirements; and therefore she believed that a person who could lift no more than five pounds could perform these jobs. (Tr. 581).  However, she later testified that she could not state with 100 percent certainty that these jobs do not require lifting over five pounds.  (Tr. 581).

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) and 20 C.F.R. §416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2002.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2002, the alleged onset date....

7

> 3. The claimant has the following severe impairments: osteoarthritis (20 CFR 404.1521...and 416.921...).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for greater than carrying 20 pounds occasionally and 10 pounds frequently.  She can stand or walk 6 hours out of 8 hours.  She can sit 6 hours out of 8 hours.  She can push or pull with her left arm only.  She can frequently climb ramps or stairs. She can never use ladders, ropes or scaffolds.  She can frequently balance, stoop, kneel and crouch.  She can never crawl.  She can frequently reach bilaterally, but can only occasionally handle with the right dominant hand. She can frequently feel and finger bilaterally.  She should avoid smoke, fumes and unprotected heights.
>
> 6. The claimant is unable to perform any past relevant work....
>
> 7. The claimant was born on August 1, 1957 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advanced age....
>
> 8. The claimant has at least a high school education and is able to communicate in English...
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills....
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform....
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2002 through the date of this decision....

(Tr. 21,23,26-27).

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  See *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Terry alleges that the ALJ erred by:  (1) failing to grant appropriate weight to the treating physician's and consultive examiner's opinions; (2) failing to articulate his reasons for finding that Terry's impairments did not meet or equal a Listing; (3) failing to articulate the basis for his credibility findings; and (4) finding substantial evidence exists that Terry is capable of performing jobs that exist in significant numbers in the economy.  The Commissioner disputes these claims.

### A.  Treatment of Medical Opinions

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048 (6th Cir. 1983).  Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis,

9

prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the treating physician's opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the fact finder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.*, 803 F.2d 211, 212 (6th Cir. 1986). The fact finder must, however, articulate a reason for not according the opinions of a treating physician controlling weight. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

Even when a treating physician's opinion is found not to be entitled to controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *4.

When the adjudicator determines that the treating source's opinion is not entitled to controlling weight, he is required to articulate good reasons for the weight given to the

treating source's medical opinion. 20 C.F.R. §§ 404.1527(d) (2) and 416.927.

> [T]he ...decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5.

In the instant case, Dr. Sessay's opinion is not supported by any objective medical evidence; there are no objective tests supporting the limitations contained in Dr. Sessay's medical assessment, nor are there any treatment notes. Therefore, Dr. Sessay's opinion is not entitled to controlling weight. The ALJ noted the absence of treatment notes in his analysis of Dr. Sessay's opinion. Accordingly, the ALJ gave his reasons for rejecting Dr. Sessay's opinion and did not err in rejecting it, regardless of whether he is a treating physician.[3] The ALJ did, however, err in rejecting the opinion of the consulting examiner.

Consulting examiner, Maureen Gallagher, D.O., M.P.H. examined Terry and noted the following: (1) swelling of the AC joint of the left clavicle; (2) increased pain with the left shoulder and mildly decreased range of motion in the left clavicle; (3) swelling and deformity of the right wrist with decreased range of motion; (4) swelling of the left hand medially in the carpal-metacarpal region of the left wrist with mild decreased range of motion; and (5) decreased extension in both elbows. These findings were supported by manual muscle testing. Dr. Gallagher also noted that Terry has chronic pain and swelling in her right wrist, has chronic pain in her left wrist, and

---

[3] The Commissioner argues that Dr. Sessay is not a treating physician. For the purposes of this appeal, the Court will assume that Dr. Sessay is Terry's treating physician.

11

wears Lidocaine patches and wrist splints. Dr. Gallagher further noted that Terry reported problems with dropping things and numbness in her hands; and she reported problems with lifting, carrying, and holding.

Generally, more weight is given to a source that has examined the claimant than one who has not. 20 C.F.R. § 404.1527(d)(1). In the instant case, Dr. Gallagher examined Terry, and her findings are supported by objective medical evidence. Nevertheless, the ALJ rejected Dr. Gallagher's opinion in favor of the opinion of a non-examining medical expert. The ALJ's reasons for doing so are insufficient and not supported by substantial evidence.

The ALJ states, " Dr. Goren testified the consultive examiner limited claimant's fingering, but Dr. Goren says this is not an appropriate limit for wrist surgery. In addition, I note that the consultive examiner found manipulation, pinch and fine coordination were normal in both hands...which does not support limits on fingering." (Tr. 26). The ALJ fails to address, in any manner, the lifting and grasping limitations included in Dr. Gallagher's opinion. The ALJ's failure to articulate his reasons for rejecting theses limitations deprives this Court of the ability to conduct any meaningful review. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

### B. The ALJ's Step Three Analysis

An ALJ is required to articulate his reasons for finding that a claimant's medical impairments do not meet or equal a listing; and his failure to do so is grounds for

remand. *Mogg v. Barnhart*,199 Fed. Appx. 572, 575 (7th Cir. 2006) (ALJ's failure to mention by name specific listing he considered together with perfunctory analysis requires remand); *Williams v. Barnhart*, 407 F Supp. 2d 862, 864 (E.D. Mich. 2005) (plaintiff entitled to remand because ALJ failed to articulate his reasons for concluding impairments did not meet or equal a listing).

In the instant case, the ALJ found that Terry's impairment did not meet or equal a listing based upon the ME's testimony. However, the ME's testimony does not identify any listings or articulate any reason for his conclusion. Indeed, the entire analysis of the issue is limited to the following:

Q. Does she have a condition or combination of conditions that would meet or equal a listing?

A. No.

(Tr. 569). Such perfunctory analysis is insufficient to meet the ALJ's burden to articulate his rationale.

### C. The ALJ's Credibility Finding

Social Security Ruling 96-7, 1996 WL 362209 provides that when evaluating the credibility of an individual's statements regarding his symptoms and their functional effects, the ALJ must give specific reasons for the weight given to the individual's statements. The ALJ cannot rely on, "intangible or intuitive notions about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." Moreover, the reasons for the credibility finding, "must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for that weight." 1996 WL 362209*6.

In the instant case, the ALJ summarizes parts of the medical record and parts of Terry's testimony. He then concludes that Terry's statements are not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. The ALJ fails to articulate which statements he finds incredible, the weight given to these statements, or the basis for his findings. Accordingly, the ALJ has failed to comply with the requirements of Social Security Ruling 96-7, 1996 WL 362209.

### D. The ALJ's Step Five Analysis

Terry alleges that the ALJ erred in finding that there exists a significant number of jobs in the economy that Terry can perform. Resolution of this issue is dependent upon the weight given to the consulting examiner's opinion upon remand. Therefore, the ALJ shall also reconsider this issue upon remand.

## VII. Decision

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

Date: June 21, 2010
                                          s/ Nancy A. Vecchiarelli
                                          NANCY A. VECCHIARELLI
                                          U.S. MAGISTRATE JUDGE